Michelle Swann - 019819
**SCHNEIDER & ONOFRY, P.C.**
3101 N. Central Avenue, Suite 600
Phoenix, AZ  85012-2658
Telephone: (602) 200-1287
Fax: (602) 230-8985
E-mail: mswann@soarizonalaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation, | No. |
| Plaintiff, | **Verified Complaint** |
| vs. | |
| Shree Laxmi Hotel, LLC, an Indiana limited liability company; and Chintu K. Patel, an Indiana resident, | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against Defendants Shree Laxmi Hotel, LLC, an Indiana limited liability company, and Chintu K. Patel, an Indiana resident, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action against some or all of the Defendants for breach of contract, failure to pay an open and stated account, unjust enrichment, violation of federal trademark infringement, and unfair competition under the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.), and related common law and

statutory causes of action arising from Defendants' refusal to cease and desist their unauthorized use of Best Western's trade name, trademarks, service marks, logos, and other similar identifying symbols (the "Best Western Symbols") after the license to use the Symbols terminated.

## THE PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Best Western is a non-profit corporation organized under the laws of the State of Arizona with its headquarters located in Phoenix, Arizona.

3.      Defendant Shree Laxmi, LLC ("Shree") is an Indiana limited liability company with its principal place of business in Castleton, Indiana, and is believed to be the owner of a hotel property located at 8300 Craig Street in Castleton, Indiana, the hotel property at issue in this case, and Shree executed a Membership Application and Agreement with Plaintiff representing that it was the owner of the hotel property.

4.      Defendant Chintu K. Patel is an Indiana resident and was identified as the voting member for the Best Western membership for the hotel property located at 8300 Craig Street in Castleton, Indiana, Texas, the hotel property at issue in this case, in a Membership Application and Agreement executed with Plaintiff.

5.      This Court has jurisdiction over the Lanham Act claim set forth below by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and over the other claims set forth below by virtue of 28 U.S.C. §§ 1332, and/or 1367.

6.      There are no matters pending between the parties in any other jurisdiction regarding Defendants' Lanham Act violations.

7.      Venue in this judicial district and the exercise of personal jurisdiction over Defendants by this Court are proper pursuant to 28 U.S.C. § 1391(b) and (c) because, among other reasons: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants executed a contract giving this Court personal jurisdiction and venue over them; (3) Defendants' trademark violations impacts the goodwill and reputation of Best Western in Arizona, and all of its members, resulting in a significant, direct harm and effect on Best Western, an American corporation engaged in commerce in the United States, Canada, and worldwide; and (4) Defendants contractually agreed to liquidated damages in the event that they continued to use Best Western Symbols after the termination of their membership.  Defendants continued to use the marks of Best Western, an American business name representing quality and reputation that is sold for use by others and, therefore, wrongfully capitalized on the goodwill and reputation of Best Western; (5) if the Best Western name is diluted and the reputation tainted, all Best Western members and customers are adversely impacted; (6) Defendants have caused events to occur and injuries to result in the State of Arizona; and (7) Defendants aimed their conduct at Best Western knowing that Best Western is located in Arizona, and harming Best Western in Arizona.  A copy of the parties' contract is attached as Exhibit 1.

## **GENERAL ALLEGATIONS**

8.      Best Western operates as a membership organization consisting of individually owned and operated hotels (i.e., its members).

9.      The rights and obligations of Best Western's members are determined by the membership and are set forth in the Membership Application and Agreement ("Membership Agreement"), Best Western's Bylaws & Articles (the "Bylaws"), Best Western's Rules and Regulations (the "Rules and Regulations"), and other Best Western "Regulatory Documents" as that term is defined in Best Western's Bylaws (the "Regulatory Documents").

10.     Best Western provides its members with a worldwide reservation system and worldwide marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"). Best Western employs a large number of employees worldwide who are dedicated to providing member hotels with the Best Western Services.

11.     Each Best Western member is authorized to use the Best Western trademarks and other intellectual property (the Best Western Symbols) in connection with its hotel pursuant to a limited, non-exclusive license (the "Best Western License"), which is set forth in the Membership Agreement. *See* Membership Agreement at ¶¶ 1, 19-26.

12.     In exchange for receiving the Best Western Services and the Best Western License, Best Western members are obligated to, among other things, pay yearly membership fees, dues and other assessments.

13.     Best Western first adopted "Best Western" as its trade name in 1947.  Shortly thereafter, Best Western adopted and began using "Best Western" as a trademark identifying hotel services provided by member hotels that were affiliated with Best

Western.  Best Western has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947.  As a result of this extensive promotion, the trade name and trademark have become famous among consumers as a source-identifying symbol.

14.     Since 1947, Best Western has registered with the United States Patent and Trademark Office ("USPTO") various trademarks, service marks, and collective membership marks.  On April 14, 1959, the Best Western logo was first registered as a service mark by the USPTO under Registration No. 677,103.  Best Western has developed the Best Western Marks at great expense over the past decades.

15.     Best Western owns the following registrations for Best Western Symbols and the marks referenced in these registrations:

(a)     a Best Western logo was registered as a collective membership mark by the USPTO on June 8, 1971, under Registration No. 914,812, which was registered to Western Motels, Inc., but assigned to Best Western International, Inc. in 1979, and is still active;

(b)     a Best Western logo was registered as a service mark by the USPTO on June 8, 1971, under Registration No. 914,813, which was registered to Western Motels, Inc., but assigned to Best Western International, Inc. in 1979, and is still active;

(c)     a Best Western logo was registered as a service mark by the USPTO on August 30, 1977, under Registration No. 1,072,360;

(d)     a Best Western logo was registered as a collective membership mark by the USPTO on September 27, 1977, under Registration No. 1,074,300 to Best Western, Inc. and assigned to Best Western International, Inc. in 1979, and is still active;

(e)     the Best Western word mark was registered by the USPTO as a service mark on February 3, 1987, under Registration No. 1,427,735;

(f)     the Best Western word mark was registered by the USPTO as a collective service mark on March 10, 1987, under Registration No. 1,432,431;

(g)     the Best Western crown logo design was registered by the USPTO as a service mark on December 6, 1988, under Registration No. 1,515,712;

(h)     Best Western's current logo was registered by the USPTO as a trademark on June 20, 1995, under Registration No. 1,900,620;

(i)     Best Western's current logo was registered by the USPTO as a service mark on November 7, 1995, as Registration No. 1,933,830;

(j)     Best Western's current logo was registered by the USPTO as a service mark on November 25, 1997, as Registration No. 2,116,079;

(k)     Best Western's current logo was registered by the USPTO as a service mark on October 14, 1997, as Registration No. 2,105,546;

(l)     Best Western's current logo was registered by the USPTO as a service mark on March 3, 1998, as Registration No. 2,140,332;

(m)     the Best Western globe and pillow logo design was registered by the USPTO as a service mark on December 24, 2002, as Registration No. 2,665,955;

(n)     The BEST WESTERN word mark was registered by the USPTO as a service mark on August 3, 2004, under Registration No. 2,869,617;

(o)     the BESTWESTERN.COM word mark was registered by the USPTO as a service mark on (i) April 11, 2006, under Registration No. 3,080,655, (ii) April 18, 2006, under Registration No. 3,083,667, and (iii) June 20, 2006 under Registration No. 3,107,814;

(p)     BW was registered by the USPTO as a service mark on November 29, 2005, under Registration No. 3,020,526; and

(q)     Best Western has registered a variety of other designs and phrases as service marks in connection with the trade of hotel and motel lodging, many of which incorporate the words BEST WESTERN.

16.     All of the registrations described above are currently in full force and effect, unrevoked, and uncanceled.  Several of the above listed federal registrations for the Best Western word mark and logo have become incontestable under 15 U.S.C. § 1065.

17.     The Best Western Symbols are inherently distinctive and possess strong secondary meaning.

18.     The Membership Agreement and the Regulatory Documents establish the minimum standard scores that each member must meet in order to achieve and maintain membership.  As a result, consumers worldwide associate Best Western Symbols with high quality in the hotel/motel industry.

19.     A key element of Best Western's branding effort is the display of the Best Western Symbols on the premises of member hotels through signs, publications, and other public displays.

20.     Upon default by a member of certain of its obligations to Best Western, including obligations set forth in the Membership Agreement and Regulatory Documents, the Best Western Board of Directors (the "Board") may terminate the membership and the Best Western License.

21.     Within 15 days following the termination of membership, the former member must cease and desist from using, and remove from public view, all Best Western Symbols and all references to Best Western.  The former member is also required to cease and desist from using any item that is similar to the Best Western Symbols in spelling, sound, appearance, or in any other matter.

22.     Upon termination of the Best Western License, the former member(s) must "actively take steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol."  *See* Membership Agreement at ¶ 22.

23.     Best Western does not authorize non-Best Western members to utilize the Best Western Symbols.

24.     Best Western's Regulatory Documents state that:

> Upon termination or cancellation of membership, the former Best Western member *shall remove the Best Western sign . . . .* *When the sign cabinet is removed, it must be destroyed or modified so that the top of the cabinet has no curvilinear*

> *features* . . . . The cost of removal of Best Western identification upon termination shall be the responsibility of the former member.

*See* Rules and Regulations, Section 300.6, attached here as Exhibit 2 (emphasis added).

## DEFENDANTS' BEST WESTERN MEMBERSHIP

25.    On or about April 14, 2008, Defendants applied for a Best Western membership and Defendants executed a Membership Application and Agreement ("Membership Agreement") for the hotel property known as the Best Western Castleton Inn located at 8300 Craig Street in Indianapolis, Indiana (the "Hotel").  *See* Exhibit 1.

26.    Defendants' Membership Agreement was approved and the Hotel became a Best Western member property with Defendant Patel acting as the Voting Member for the Hotel and, as such, Defendant Patel became personally liable for the responsibilities of the Best Western affiliation, including compliance with the Membership Agreement and Regulatory Documents.

27.    Through the Membership Agreement and the Regulatory Documents, Defendants agreed to timely pay all fees, dues, charges, and assessments imposed generally on the membership by the Board and to promptly pay the costs of all goods or services provided by or ordered through Best Western, including that past due amounts would bear interest at the rate of 1.5% per month from the date due until paid.

28.    Best Western inspected the Hotel on or about December 29, 2010, and discovered that the Hotel was not meeting the quality standards required by the Regulatory Documents.

29.     As a result of the December, 2010 inspection findings, Best Western placed the Hotel on notice that, because it obtained two substandard quality assessment scores within 18 months, the Board would hold a hearing to determine whether to cancel the Hotel's Best Western membership.

30.     A representative for the Defendants attended the March 2011 meeting when the Board considered the status of Defendants' membership and presented Defendants' reasons why the membership should not be terminated.

31.     After considering Defendants' statements and other evidence, the Board voted to continue Defendants' Best Western membership subject to compliance with conditions set forth in a Conditional Extension letter.

32.     Defendants were scheduled to request waivers of various design-related issues to the Board in May 2011 and subsequently withdrew their request for waivers of those items.

33.     Defendants refused to agree to the conditions set forth in the Conditional Extension Letter and, therefore, Defendants' Best Western membership terminated effective June 3, 2011.  *See* Exhibit 3.

34.     Defendants were notified by letter dated June 3, 2011 that all aspects of their Best Western membership were cancelled as of that date.  *Id.*

35.     The June 3, 2011 letter notified Defendants that, due to the membership termination, the License was also terminated and they were required to, on or before June 18, 2011, remove all Best Western Symbols at the Hotel, remove all curvilinear sign

cabinets at the Hotel, and remove any and all references to the Hotel as a Best Western member in advertisements for the Hotel. *Id.*

36.     The June 3, 2011 letter also notified the Defendants that, due to the termination of its membership, the Defendants were required to satisfy their open and stated account with Best Western. *Id.*

37.     On June 27, 2011**,** a Best Western representative inspected the Hotel and observed numerous items in guest rooms containing Best Western Symbols, exterior signage remained uncovered and displayed Best Western Symbols, as well as a Department of Transportation sign that displayed the Best Western Symbols. *See* Exhibit 4.

38.     On July 15, 2011, Best Western sent Defendants a letter and demanded that they cease and desist use of the Best Western Symbols on items at the Hotel, including signage, and in advertisements for the Hotel, remove all curvilinear sign cabinets, and satisfy the open and stated account balance. *See* Exhibit 5.

39.     On August 15, 2011, a Best Western representative inspected the Hotel and observed that the Department of Transportation sign had been removed, all Best Western Symbols had been removed from the guest rooms, and the exterior signage on the Hotel had been bagged, but the Best Western curvilinear sign cabinets on the exterior signage had not been removed. *See* Exhibit 6.

40.     On October 5, 2011, a Best Western representative again inspected the Hotel and observed that Defendants still had not removed the curvilinear sign cabinets at the Hotel on the exterior signage at the Hotel. *See* Exhibit 7.

41.   Defendants were required to have ceased use of all the Best Western Symbols on or before June 18, 2011 and simply refused to do so.

42.   As of December 3, 2012, multiple websites for the Hotel are using the "Best Western" trade name in connection with advertisements for the Hotel.  *See* Exhibit 8.

43.   Defendants' intentional and unlawful use of the Best Western Symbols on signage and advertisements for the Hotel after their membership terminated is likely to cause confusion for the travelling public and for those who stayed at the Hotel with the mistaken belief that the Hotel was a Best Western member property.

44.   Defendants' misconduct also likely diverted to them the benefit of and/or damaged the reputation and goodwill that Best Western has built through the years.

45.   Defendants' continued use of the Best Western Symbols in advertisements after June 18, 2011 constitutes a breach of the Membership Agreement.

46.   Best Western fully performed all of its obligations under the Membership Agreement.

47.   Defendants have refused and continue to refuse to pay to Best Western the amounts due and owing.

## COUNT I – BREACH OF CONTRACT

48.   Best Western incorporates by reference the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

49.   Defendants have refused and continue to refuse to pay to Best Western the amounts due and owing as required by the Membership Agreement.

50.     Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on the unpaid amounts at the rate of 1.5% per month.

51.     Pursuant to the express terms of the Membership Agreement, Defendants were obligated to cease and desist from representing that the Hotel was formerly associated with Best Western within fifteen days after the membership terminated, but as of December 3, 2012 were still associating the Hotel with Best Western through advertisements for the Hotel.  *See* Exhibit 8.

52.     As of December 1, 2012, there remains due and owing, by Defendants to Best Western, the sum of no less than $46,019.50.  *See* May 1, 2011 to December 1, 2012 Invoices, attached hereto as Exhibit 9.

53.     Pursuant to ¶ 36 of the Membership Agreement, and A.R.S. §§ 12-341 and 12-341.01, Best Western is entitled to recover the attorneys' fees and costs incurred in pursuing this action.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 53 above as though fully set forth herein.

55.     In breaching the Membership Agreement and Regulatory Documents, including the failure to cease use of the Best Western Symbols at the Hotel and to advertise the Hotel, Defendants have acted in bad faith to the detriment of Best Western and its business.

56.     Defendants' acts in bad faith constitute material breaches of the implied covenant that they would act in good faith and deal fairly with Best Western, with whom they had a contractual relationship and to whom they owed the duty of good faith and fair dealing.

57.     As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Best Western has suffered and continues to suffer damage.

58.     Defendants' bad faith actions in breach of the implied covenant of good faith and fair dealing were willful and wanton and in reckless disregard for Best Western's rights, entitling Best Western to punitive damages.

59.     Pursuant to ¶ 36 of the Membership Agreement, and A.R.S. §§ 12-341 and 12-341.01, Best Western is entitled to recover the attorneys' fees and costs incurred in pursuing this action.

## COUNT III – OPEN ACCOUNT

60.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 59 above as though fully set forth herein.

61.     Best Western rendered services and provided supplies on an open account, and Defendants agreed to pay for such services and supplies on an open account and to pay for such services and supplies when due in accordance with the Membership Agreement.

62.     Defendants have failed to pay for the services and supplies that Best Western has provided.  As of December 1, 2012, there remains due and owing, by Defendants to Best Western, the sum of no less than $46,019.50.  *See* Exhibit 9.

63.     Pursuant to the express terms of the Membership Agreement, interest has accrued and continues to accrue on this sum at the rate of one and one-half percent (1.5%) per month until paid in full.

64.     Pursuant to ¶ 36 of the Membership Agreement, and A.R.S. §§ 12-341 and 12-341.01, Best Western is entitled to recover the attorneys' fees and costs incurred in pursuing this action.

## COUNT IV – STATED ACCOUNT

65.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 74 above as though fully set forth herein.

66.     A full, just, and true accounting was made and stated between Best Western and Defendants on a monthly basis, with no objections being made to any item or items thereof by Defendants.

67.     After allowing all just and lawful offsets, payments, and credits, the unpaid balance and reasonable value of the services provided to Defendants and the costs advanced on behalf of Defendants by Best Western as of December 1, 2012 is the sum of $46,019.50, representing certain fees and other charges imposed on Defendants as a Best Western member, and Defendants are indebted to Best Western in such an amount.

68.     True and correct copies of the billing invoices (dated May 1, 2011 through December 1, 2012) issued to Defendants by Best Western, reflecting the date of invoices for services rendered and any payments or credits, and the balances due on each invoice by Defendants, are attached as Exhibit 9 hereto.

69.     The amount owed to Best Western by Defendants, as reflected on each monthly billing statement of Best Western, is a liquidated sum and Best Western is entitled to pre- and post-judgment interest on those sums at the highest rate allowed by law until paid in full.

70.     Pursuant to the Membership Agreement, and A.R.S. §§ 12-341 and 12-341.01, Best Western is entitled to recover the attorneys' fees and costs incurred in pursuing this action.

## COUNT V – UNJUST ENRICHMENT

71.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 70 above as though fully set forth herein.

72.     Best Western provided Defendants with goods, services, and supplies while expecting to be compensated in return.

73.     Defendants knew of Best Western's expectation, and accepted and benefited from the goods, services, and supplies that Best Western provided to them and to the Hotel.

74.     It is inequitable and unconscionable for Defendants to have enjoyed the benefit of Best Western's actions without compensating Best Western, and Defendants have been, and continue to be, unjustly enriched to Best Western's detriment.

## COUNT VI – BREACH OF CONTRACT; POST TERMINATION USE OF TRADEMARKS

75.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 74 as though fully set forth herein.

76.     Pursuant to the express terms of the Membership Agreement, Defendants were obligated to remove from public view and to cease all use of the Best Western Symbols in the advertisement for the Hotel within fifteen (15) days after termination.

77.     Pursuant to the express terms of the Membership Agreement, Defendants were obligated to cease and desist from making any representation, directly or indirectly, that the Hotel was formerly affiliated with Best Western.

78.     Pursuant to the express terms of the Membership Agreement, Defendants were to "actively take steps as may be necessary to cause the cessation of all advertising and distribution of promotional material containing any Best Western Symbol."

79.     Despite their contract obligations, as of December 3, 2012, Defendants are still using Best Western Symbols in advertisements for the Hotel and, as late as at least October 5, 2011, failed to remove all Best Western Symbols and curvilinear signage at the Hotel.

80.     As of December 3, 2012, Defendants are advertising the Hotel through Best Western's trade name and trademarks at the www.travel.yahoo.com and hotels-rates.com websites as well as other websites.

81.     Paragraph 24 of the Membership Agreement provides for liquidated damages where, as here, a former member continues to use the Best Western Symbols in connection with the hotel properties for more than fifteen (15) days following the termination of their Best Western membership and the Best Western License.   The amount of liquidated damages is equal to fifteen percent (15%) of the mean of the hotel property's room rates

per day, multiplied by the total number of rooms for every day that a former member continues to use the Best Western Symbols beyond the fifteen-day period.

82.     Beginning June 19, 2011, Defendants owe $824.31 per day for each day they are unlawfully using the Best Western Symbols to advertise the Hotel property.

83.     The liquidated damages calculations are based on the Hotel's information regarding daily rates and total number of rooms.  Copies of the Marketing Statistics Report showing the Average Daily Rates (ADR) for the hotel property and the Best Western Account Information Computer Screen, showing the number of units for the hotel, are attached as Exhibit 10.

84.     Pursuant to ¶ 36 of the Membership Agreement, and A.R.S. § 12-341.01, Best Western is entitled to recover all attorneys' fees and costs incurred in this action.

## COUNT VII – FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1))

85.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 84 as though fully set forth herein.

86.     Defendants have failed to cease and desist from the use of the federally registered Best Western Symbols on signage at the Hotel and in internet advertisements for the Hotel.

87.     Defendants' actions complained of have at all times been without Best Western's consent, and their acts constitute infringement of the federally registered Best Western Symbols in violation of 15 U.S.C. § 1114(1).

88.     Defendants' acts complained of have damaged Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from Defendants' conduct.   Such injuries include harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate.

89.     Best Western is, therefore, requesting and entitled to a preliminary and permanent injunction restraining and enjoining defendants and their respective officers, members, agents, servants, employees, and any other persons or entities acting on behalf of or in concert with Defendants, from using the Best Western Symbols or any colorable imitation thereof, in connection with the promotion, advertisement, and sale of goods and services without Best Western's authorization, pursuant to 15 U.S.C. § 1116.

90.     Defendants' infringement is willful, and Best Western is entitled to recover all damages sustained as a result of the unlawful conduct, including three times Defendants' profits and Best Western's damages, as well as the costs of this suit and attorneys' fees, pursuant to 15 U.S.C. § 1117.

## COUNT VIII – FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (U.S.C. § 1125(a))

91.     Best Western incorporates by reference the allegations contained in paragraphs 1 through 90 above as though fully set forth herein.

92.     The unauthorized use of the Best Western Symbols at the Hotel and in advertising for the Hotel is likely to cause the public to believe, erroneously, that the non-

member Hotel and associated services are sponsored by, endorsed by, or associated with Best Western.

93.     The operation and competition by Defendants with Best Western through infringement of the federally registered Best Western Symbols in connection with the Hotel constitutes a false designation of origin and unfair competition under 15 U.S.C. § 1125(a).

94.     Defendants' operation and competition with Best Western through infringement of the federally registered Best Western Symbols in connection with the Hotel constitutes unfair competition under 15 U.S.C. § 1125(a).

95.     Defendants have caused Best Western to suffer immediate, irreparable, and continuous loss, including injury to its goodwill and reputation.

96.     Upon information and belief, Defendants have undertaken the acts complained of herein willfully and with the intent to cause confusion, mistake, and deception on the part of the public.

97.     Defendants are using the Best Western Symbols unlawfully and, unless restrained by this Court, they will continue to commit the foregoing acts of unfair competition.

98.     Defendants' acts complained of have damaged Best Western irreparably. Monetary damages will not afford full and adequate relief for all of Best Western's injuries resulting from Defendants' conduct.   Such injuries include harm to Best Western's goodwill and reputation in the marketplace that money cannot sufficiently compensate.

99.    Best Western is, therefore, requesting and entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their respective officers, members, agents, servants, employees, and any other persons or entities acting on behalf of or in concert with Defendants, from using the Best Western Symbols or any colorable imitation thereof, in connection with the promotion, advertisement, and sale of goods and services without Best Western's authorization, pursuant to 15 U.S.C. § 1116.

100.    Defendants' acts of unfair competition are willful and entitle Best Western to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

### COUNT IX – FEDERAL TRADEMARK DILUTION – (15 U.S.C. § 1125(c))

101.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 100 above as though fully set forth herein.

102.    Best Western has advertised and publicized the Best Western Symbols extensively for decades throughout the United States, including the State of Arizona.  As a result of their inherent distinctiveness and extraordinarily widespread use, the Best Western Symbols have acquired a high degree of recognition and fame for hotel services.

103.    The unauthorized use of the Best Western Symbols in commerce by Defendants began long after Best Western's Symbols had already become famous throughout the United States, including the State of Arizona.

104.    The unauthorized use of the Best Western Symbols or variations thereof by Defendants is likely to cause dilution of the distinctive quality of the Best Western Symbols.

105.    Defendants have committed the acts complained of herein willfully and with the intent to trade on Best Western's reputation and/or to cause dilution of Best Western's famous Symbols.

106.    Defendants' acts complained of have damaged Best Western irreparably.

107.    For these Defendants' trademark infringement, Best Western is entitled to recover (1) Defendants' profits, (2) any damages sustained by Best Western, and (3) the costs of the action and/or any other remedies permitted by the Lanham Act.

108.    Defendants' acts of unfair competition are willful and entitle Best Western to recover damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1117.

## COUNT X – UNFAIR COMPETITION – ARIZONA LAW

109.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 108 above as though fully set forth herein.

110.    Defendants' acts complained of herein constitute unfair competition under the laws of the State of Arizona.

111.    Defendants have been unjustly enriched and have damaged Best Western's business, reputation, and goodwill.

112.    Upon information and belief, Defendants' acts complained of herein were intentional, wanton, willful, guided by an evil hand and mind, and committed in bad faith and with the intent to confuse and deceive the public.

113.    Defendants' acts complained of herein have caused Best Western irreparable harm for which there is no adequate remedy at law and Best Western is entitled to

damages, including Defendants' profits, Best Western's damages, attorneys' fees and costs.

## COUNT XI – TRADEMARK INFRINGEMENT UNDER ARIZONA LAW (A.R.S. § 44-1451)

114.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 113 above as though fully set forth herein.

115.    The Best Western Symbols are famous within the State of Arizona, and became famous in Arizona long before Defendants began using the marks.

116.    Defendants' acts complained of herein constitute commercial use of a mark or trade name and trademark infringement based on Arizona registered Trademark No. 51370 in violation of A.R.S. § 44-1451.

117.    Upon information and belief, Defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake, and deception on the public.

118.    Defendants' acts complained of herein have caused irreparable harm and injury to Best Western's famous Best Western Symbols, business reputation, and goodwill for which there is no adequate remedy at law and Best Western is entitled to damages, including Defendants' profits, Best Western's damages, attorneys' fees and costs.

## COUNT XII – COMMON LAW TRADEMARK INFRINGEMENT

119.    Best Western incorporates by reference the allegations contained in paragraphs 1 through 118 above as though fully set forth herein.

120.    Best Western has common law rights in the Best Western Symbols through the use of the marks in commerce, such rights existing long before any use of the marks by Defendants.

121.    Defendants' acts complained of herein constitute common law infringement of the Best Western Symbols.

122.    Upon information and belief, Defendants have undertaken these acts willfully and with the intent to trade on Best Western's reputation and to cause confusion, mistake, and deception on the public.

123.    Defendants' acts complained of herein have caused irreparable harm and injury to Best Western's famous Best Western Symbols, business reputation, and goodwill for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

A.    With respect to Counts I, II, III, IV, and V:

The total of unpaid fees, which as of December 1, 2012, totals no less than $46,019.50, including interest at the rate of one and one-half percent (1.5%) per month until paid in full.

B.    With respect to Count VI:

1.    Liquidated damages for breach of the Best Western Agreement in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per day

multiplied by the total number of rooms beginning June 19, 2011 until Defendants cease and desist from the unlawful and unauthorized use of the Best Western Symbols.

2.     Beginning June 19, 2011, Defendants owe $824.31 per day for each day the Best Western Symbols are unlawfully used.

C.     With respect to Counts VI, VII, VIII, IX, X, XI and XII:

1.     For these Defendants' trademark infringement, Best Western is entitled to recover (1) Defendants' profits, (2) any damages sustained by Best Western, and (3) attorneys' fees and the costs of the action and/or any other remedies permitted by the Lanham Act, Arizona law, and common law.

2.     An award of treble damages against Defendants pursuant to 15 U.S.C. § 1117(b) or, alternatively, an award of liquidated damages to Best Western against Defendants calculated in the manner provided for in ¶ 24 of the Membership Agreement, whichever is greater.

D.     With respect to all Counts:

1.     Injunctive relief enjoining Defendants and their respective officers, members, agents, servants, and employees, and any other persons and entities acting on behalf of or in concert with Defendants, to immediately and permanently remove all Best Western Symbols as used on the premises of, or in reference to, the Hotel, including (without limitation) any advertisements, signage or any other display or items bearing any of the Best Western Symbols.

2.     Injunctive relief ordering Defendants to cause the removal of all Best Western Symbols from advertisements and signage relating to the Hotel, and reimbursement of costs incurred by Best Western to cause the removal of the same should Defendants fail to do so (in addition to whatever penalties the Court may impose upon Defendants for failing to comply with the Court's order to remove any infringing signs, displays, advertisements, or items from the Hotel) within ten (10) days of the injunction.

3.     Attorneys' fees and costs incurred herein against Defendants pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, and/or 15 U.S.C. § 1117(a), (or any other applicable law).

4.     An award to Best Western of its damages in an amount to be proven at trial.

5.     As allowed by law, an award of special exemplary and/or punitive damages in an amount to be determined at trial.

6.     For such other and further relief as the Court deems just and proper in the circumstances.

Dated this 11th day of December, 2012.

SCHNEIDER & ONOFRY, P.C.


By s/Michelle Swann
Michelle Swann
3101 N. Central Avenue, Suite 600
Phoenix, Arizona  85012-2658
Attorneys for Plaintiff

## VERIFICATION

STATE OF ARIZONA            )
                           ) ss.
COUNTY OF MARICOPA          )

I, Cheryl Pollack, state as follows:

I am Director of Member Care and Development Administration of Best Western International, Inc. ("Best Western"). I am authorized by Best Western to execute this Verification. I am over the age of 18 and a resident of Maricopa County, Arizona. I have read the foregoing Verified Complaint and know its contents. The information contained in the foregoing Verified Complaint is true and correct to the best of my knowledge and belief.

_Cheryl Pollack_
Cheryl Pollack

The foregoing instrument was acknowledged before me this 7th day of December, 2012, by Cheryl Pollack.

_Loretta Henneman_
Notary Public

My Commission Expires: 6-24-2014

LORETTA HENNEMAN
Notary Public - Arizona
Maricopa County
My Comm. Expires Jun 24, 2014